*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# S T A T E   O F   M I C H I G A N

# C O U R T   O F   A P P E A L S

SHANNON N. KNIGHT and KEITH KNIGHT,

        Plaintiffs-Appellees,

v

JOHNNY LAMAR GREEN and COLE CARRIERS (MICHIGAN), INC.,

        Defendants-Appellants.

UNPUBLISHED
October 19, 2023

No. 360663
Wayne Circuit Court
LC No. 18-003127-NI

Before: CAVANAGH, P.J., and RIORDAN and PATEL, JJ.

PER CURIAM.

Defendants, Johnny Lamar Green and Cole Carriers (Michigan), Inc. ("Cole Carriers"), appeal as of right the trial court's order awarding plaintiffs case evaluation sanctions consisting of attorney and paralegal fees in the amount of $255,337.50, and expert witness fees of $67,945.17, for a total award of $323,282.67. We affirm the trial court's determination that plaintiffs are entitled to case evaluation sanctions and affirm the award of expert witness fees, but vacate the award of attorney and paralegal fees and remand for further proceedings.

This case arises out of a third-party automobile negligence action filed by plaintiffs in 2018. The case was scheduled for a jury trial in July 2021. At that time, Peter Fracassi, a Canadian citizen and owner of Cole Carriers, did not appear for trial, allegedly because he believed that COVID-19 travel restrictions prevented him from traveling from Canada to the United States. The trial court rejected this excuse and entered a default against both Cole Carriers and Green, who also did not appear for trial. After a bench trial on damages, the trial court entered a judgment awarding plaintiffs $367,407.01. Plaintiffs also requested case evaluation sanctions, which the trial court granted on November 29, 2021. Following an evidentiary hearing on January 4, 2022, to determine an appropriate award of case evaluation sanctions, the trial court issued its order of case evaluation sanctions on January 24, 2022.

## I. PRESERVATION OF THE ISSUES

An issue is preserved if it is raised before the trial court. *Glasker-Davis v Auvenshine*, 333 Mich App 222, 227; 964 NW2d 809 (2020). As a general rule, however, an issue first raised in a

motion for reconsideration is unpreserved. *George v Allstate Ins Co*, 329 Mich App 448, 454; 942 NW2d 628 (2019). "Although this Court has inherent power to review an issue not raised in the trial court to prevent a miscarriage of justice, generally a 'failure to timely raise an issue waives review of that issue on appeal.' " *Walters v Nadell*, 481 Mich 377, 387; 751 NW2d 431 (2008), quoting *Napier v Jacobs*, 429 Mich 222, 232-233; 414 NW2d 862 (1987).

## II.  STANDARD OF REVIEW

This Court reviews a trial court's decision to award case evaluation sanctions de novo. *Peterson v Fertel*, 283 Mich App 232, 239; 770 NW2d 47 (2009).  However, the amount of an award is reviewed for an abuse of discretion.  *Id*.  A court abuses its discretion when it selects an outcome falling outside the range of reasonable and principled outcomes.  *Ronnisch Constr Group, Inc v Lofts on the Nine, LLC*, 499 Mich 544, 552; 886 NW2d 113 (2016).  This Court reviews the interpretation and application of court rules de novo as a question of law.  *Reitmeyer v Schultz Equip & Parts Co, Inc*, 237 Mich App 332, 336; 602 NW2d 596 (1999).

## III.  CASE EVALUATION SANCTIONS

## A.  DECISION TO AWARD

Defendants first argue that the trial court erred by failing to apply former MCR 2.403(O)(1)[1] to deny plaintiffs' motion for case evaluation sanctions in the interest of justice.  The trial court awarded case evaluation sanctions pursuant to former MCR 2.403(O), which at the time provided, in relevant part:

> (1) If a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation.  However, if the opposing party has also rejected the evaluation, a party is entitled to costs only if the verdict is more favorable to that party than the case evaluation.

> (2) For the purpose of this rule "verdict" includes,

> (a) a jury verdict,

> (b) a judgment by the court after a nonjury trial,

> (c) a judgment entered as a result of a ruling on a motion after rejection of the case evaluation.

"The use of the word 'must' indicates that the imposition of these sanctions is mandatory." *Allard v State Farm Ins Co*, 271 Mich App 394, 398; 722 NW2d 268 (2006).  However, former MCR 2.403(O)(11) provided that a trial court "may, in the interest of justice, refuse to award actual

---

[1] As discussed later in this opinion, MCR 2.403 was amended, effective January 1, 2022, to delete Subrule (O), the provision authorizing case evaluation sanctions.

costs" if a "verdict" is the result of a motion as provided in Subrule (2)(c). Defendants argue that this exception applies because the judgment in favor of plaintiffs was the result of a motion for default and default judgment. We disagree.

The parties dispute whether the judgment for plaintiff was the result of a motion. Defendants argue that the judgment was the result of a motion for a default, and therefore, the trial court should have considered the interest-of-justice exception in former MCR 2.403(O)(11). We disagree with defendants.

"[A] default settles the question of liability as to well-pleaded allegations and precludes the defaulting party from litigating that issue." *Wood v Detroit Auto Inter-Ins Exch*, 413 Mich 573, 578; 321 NW2d 653 (1982). "However, a default judgment is not an admission regarding damages" and a defaulting party "has a right to participate where further proceedings are necessary to determine the amount of damages." *Kalamazoo Oil Co v Boerman*, 242 Mich App 75, 79; 618 NW2d 66 (2000) (quotation marks and citation omitted). Furthermore, "a defaulting party who has properly invoked his right to a jury trial retains that right if a hearing is held to determine the amount of recovery." *Wood*, 413 Mich at 583-584.

On the day scheduled for trial, defense counsel announced that neither Green nor Fracassi would be attending the trial. The trial court did not believe that defendants provided adequate reasons for not attending the trial, revisited its earlier denial of plaintiffs' motion for a default, and ordered a default for liability against defendants. The trial court indicated that it would proceed on the question of damages, and questioned the parties regarding their demands for a jury trial. Both parties waived their jury demands and agreed that the trial court could preside over a hearing to determine damages. The parties presented witnesses and both parties had the opportunity to examine and cross-examine the witnesses and introduce evidence. After five days of testimony, the trial court entered a judgment in favor of plaintiff in the amount of $367,407.01.

Plaintiff's counsel characterized the proceeding on damages as "a default judgment hearing, not necessarily a trial." Defense counsel also referred to the proceeding as a default judgment hearing. However, a court is not bound by the labels litigants choose for their motions, proceedings, or claims "because this would exalt form over substance." *Lieberman v Orr*, 319 Mich App 68, 78 n 4; 900 NW2d 130 (2017); *Davis v Chatman*, 292 Mich App 603, 617 n 8; 808 NW2d 555 (2011). Thus, the fact that the parties referred to the proceedings as "a default judgment hearing" is not controlling. See *id*. We must consider the proceedings as a whole to determine their nature. See *Lieberman*, 319 Mich App at 78 n 4.

Because a default is not an admission of damages and further proceedings were necessary to determine plaintiffs' entitlement to damages, the judgment in this case was not the result of a motion. See *Kalamazoo Oil Co*, 242 Mich App at 79. Substantively, the proceeding that resulted in the judgment for plaintiff was a trial. The trial court issued its judgment for damages after a bench trial that took place over five days, in which evidence was introduced and 13 witnesses testified and were cross-examined by defendants. The parties provided the trial court with a verdict form and the trial court issued an award of $367,407.01. Therefore, the judgment was not the result of a motion. Accordingly, the interest-of-justice exception in former MCR 2.403(O)(11) was not applicable and the trial court did not err by refusing to apply that exception to deny plaintiffs' motion for case evaluation sanctions.

-3-

Defendants also argue that the trial court should have denied plaintiffs' request for case evaluation sanctions because MCR 2.403 was amended, effective January 1, 2022, to delete Subrule (O), the provision authorizing case evaluation sanctions. Defendants did not preserve this issue for appeal because they did not raise it at or before the January 4, 2022 evidentiary hearing on plaintiffs' request for case evaluation sanctions, or before the court issued its order awarding case evaluation sanctions on January 24, 2022. Defendants did not raise this issue until they filed their motion for reconsideration on February 14, 2022, which failed to properly preserve the issue. See *George*, 329 Mich App at 454.

The parties do not dispute that at the time case evaluation occurred, and at all times while the parties were deciding whether to accept or reject the case evaluation award, MCR 2.403(O)(1) provided that if "a party has rejected an evaluation and the action proceeds to verdict, that party must pay the opposing party's actual costs unless the verdict is more favorable to the rejecting party than the case evaluation." In addition, the former rule was still in effect when plaintiffs filed their motion for case evaluation sanctions and when the trial court entered its order on November 29, 2001, holding that plaintiffs were entitled to case evaluation sanctions under this court rule.

Defendants argue that they were not able to raise this issue sooner because they were unaware of the rule change at the time the parties briefed the issue. However, the Michigan Supreme Court issued its order amending MCR 2.403 to eliminate case evaluation sanctions on December 2, 2021, see 508 Mich clxiii, and the evidentiary hearing was held on January 4, 2022, after the effective date of the amended rule. The trial court did not issue its order awarding case evaluation sanctions until January 24, 2022. If defendants believed that the amended rule foreclosed an award of case evaluation sanctions in this case, they had ample opportunity to raise the issue after December 2, 2021, and before the court awarded sanctions on January 24, 2022, including at the January 4, 2022 evidentiary hearing. Because defendants failed to timely raise this issue in the trial court, they waived appellate consideration of this claim. Therefore, we decline to consider it.[2]

---

[2] Under MCR 1.102, which applies to later amendments to court rules, *People v Jackson*, 465 Mich 390, 396; 633 NW2d 825 (2001), citing *Reitmeyer*, 237 Mich App at 337; see also 1 Dean & Longhofer, Michigan Court Rules Practice (4th ed), pp 4-5 ("The same principle [contained in MCR 1.102] has been applied to subsequently adopted or amended rules."), " 'the norm is to apply the newly adopted court rules to pending actions unless there is reason to continue to apply the old rules,' " such as when application of the new rule would work an injustice on a party. *Reitmeyer*, 237 Mich App at 337, quoting *Davis v O'Brien*, 152 Mich App 495, 500; 393 NW2d 914 (1986). However, it is questionable whether the amended version of MCR 2.403 and MCR 1.102 have any applicability to this case, given that all relevant proceedings—including case evaluation, the parties' decisions to reject the case evaluation award, the bench trial, the trial court's issuance of the judgment pursuant to which plaintiffs became eligible to receive case evaluation sanctions, and the trial court's order holding that plaintiffs were entitled to an award of case evaluation sanctions—all occurred, not only before January 1, 2022, the effective date of the amended rule, but also before the Supreme Court even issued its order amending the court rule. In other words, at the time the trial court was called upon to decide whether plaintiffs were entitled to an award of

Accordingly, we affirm the trial court's decision to award plaintiffs case evaluation sanctions pursuant to former MCR 2.403(O).

## B. AMOUNT OF AWARD

Next, defendants argue that the trial court erred in determining an appropriate award of case evaluation sanctions. We agree. At the time the parties participated in case evaluation, MCR 2.403(O)(6) provided:

> (6) For the purpose of this rule, actual costs are
>
> (a) those costs taxable in any civil action, and
>
> (b) a reasonable attorney fee based on a reasonable hourly or daily rate as determined by the trial judge for services necessitated by the rejection of the case evaluation, which may include legal services provided by attorneys representing themselves or the entity for whom they work, including the time and labor of any legal assistant as defined by MCR 2.626.

The purpose of former MCR 2.403(O) was to encourage parties to seriously engage and consider an evaluation and "provide financial penalties to the party that, as it develops, 'should' have accepted but did not." *Smith v Khouri*, 481 Mich 519, 527-528; 751 NW2d 472 (2008). However, the rule was not meant to provide economic relief or produce windfalls. *Id*. at 528. The rule only permits an award of a reasonable fee, one that is similar to fees "customarily charged in the locality for similar legal services, which, of course, may differ from the *actual* fee charged or the highest rate the attorney might otherwise command." *Id*. (emphasis in original).

In determining an appropriate award, "[a] trial court must begin its reasonableness analysis 'by determining the fee customarily charged in the locality for similar legal services' and then multiplying that number 'by the reasonable number of hours expended in the case.' " *Pirgu v United Servs Auto Ass'n*, 499 Mich 269, 275; 884 NW2d 257 (2016), quoting *Smith*, 481 Mich at 530-531. The burden rests with the party requesting attorney fees to "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." *Smith*, 481 Mich at 531 (quotation marks and citation omitted). The party seeking a reasonable attorney fee pursuant to MCR 2.403(O) "must present something more than anecdotal statements to establish the customary fee for the locality." *Smith*, 481 Mich at 532. "If a factual dispute exists over the reasonableness of the hours billed or hourly rate claimed by the fee applicant, the party opposing the fee request is entitled to an evidentiary hearing to challenge the applicant's evidence and to present any countervailing evidence." *Id*.

---

case evaluation sanctions, MCR 2.403 had not yet been amended and the trial court had no option other than to apply the rule then in effect, which at that time authorized an award of case evaluation sanctions.

After determining a reasonable hourly rate and multiplying that rate by the number of reasonable hours billed, the trial court will have established a baseline figure. *Id*. at 533. The trial court should then consider the following factors to determine if an increase or decrease of the baseline number is warranted:

> (1) the professional standing and experience of the attorney; (2) the skill, time and labor involved; (3) the amount in question and the results achieved; (4) the difficulty of the case; (5) the expenses incurred; and (6) the nature and length of the professional relationship with the client. [*Smith*, 481 Mich at 529, quoting *Wood*, 413 Mich at 588.]

A trial court may also consider Rule 1.5(a) of the Michigan Rules of Professional Conduct, *Smith*, 481 Mich at 529-530, which provides:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

However, "the amount involved and the results obtained," and "whether the fee is fixed or contingent," are not relevant considerations for a trial court's determination of case evaluation sanctions. *Smith*, 481 Mich at 534 n 20. "[I]n order to aid appellate review, a trial court should briefly discuss its view of the remaining factors." *Id*. at 531.

In this case, the trial court began its analysis by reviewing survey data to determine that "the fees customarily charged for the top attorneys within the same locality and for the same services is $630-$750/hr." The trial court based this finding on the 2020 Economics of Law Practice Survey Attorney Income and Billing Rate Report issued by the State Bar of Michigan, which plaintiffs introduced in support of their motion. The court noted that it was undisputed that plaintiffs' lead attorney, Ven Johnson, was one of the top attorneys in the metropolitan Detroit area and based its finding on the survey data indicating a rate of $630 an hour for the top attorneys in his locality, and a rate of $750 an hour rate for the top attorneys practicing auto law and personal injury law.

After initially determining the fee that top attorneys in Detroit who practice personal injury law charge, the court made an upward departure from that rate. That is the approach that the trial court in *Smith* took, which the Supreme Court rejected. In *Smith*, the trial court took "judicial notice of the fact that top trial attorneys in Oakland County charge $450 an hour or more." *Smith*, 481 Mich at 533. While the Supreme Court agreed that some trial attorneys in Oakland County had rates as high as $450 an hour, it found that the customarily charged rate in the locality for similar legal services was the measure of a reasonable rate, and was most likely a different rate than fees paid to the top lawyers. *Id*. The Supreme Court remanded the case to the trial court for reconsideration in light of the guidelines set forth in its opinion. *Id*. The Court "reiterate[d] that the goal of awarding attorney fees under MCR 2.403 is to reimburse a prevailing party for its 'reasonable' attorney fee; it is not intended to 'replicate exactly the fee an attorney could earn through a private fee arrangement with his client.' " *Id*. at 534. (citations omitted).

In the instant case, the trial court began its analysis by determining the "fees customarily charged for the top attorneys," which, as observed in *Smith*, is not necessarily "the fee customarily charged in the locality for similar legal services." *Id*. at 533. As in *Smith*, it is necessary to remand this case to the trial court for reconsideration of the fee award consistent with *Smith*. In particular, the trial court must determine "the fee customarily charged in the locality for similar legal services," *id.*, rather than, as the trial court previously determined, the "fees customarily charged for the top attorneys."

While the trial court did not multiply its finding of a reasonable rate by the reasonable number of hours expended in the case, the trial court found that the number of hours, 163.50, that Johnson requested was reasonable. However, because the trial court's upward departure did not begin with a baseline reasonable rate, but instead began with a "top" rate, the court erred by not following the *Smith* guidelines. With regard to attorneys Ayanna Hatchett and Jason Brown, and the paralegal, Elizabeth Dodson, the trial court was less forthcoming in its analysis of a reasonable hourly rate. The trial court found that an hourly rate of $450 was "well within appropriate range" with respect to Hatchett, that an hourly rate of $300 was "well within range" for Brown, and that an hourly rate of $150 was a reasonable rate for Dodson. However, the trial court did not find that these rates were the fees "customarily charged in the locality for similar legal services." *Id*.; see also *Augustine v Allstate Ins Co*, 292 Mich App 408, 427-428; 807 NW2d 77 (2011). The court also failed to discuss whether it found the hours for which Hatchett, Brown, and Dodson were requesting payment were reasonable.[3]

---

[3] We reject defendants' argument that an award of fees for Dodson's paralegal services was improper. The cases cited by defendants in support of this argument were all decided before January 1, 2001. At that time, recovery of costs for a legal assistant's time was not authorized by statute or court rule. See *Joerger v Gordon Food Serv, Inc*, 224 Mich App 167, 181-182; 568 NW2d 365 (1997). However, the Supreme Court adopted MCR 2.626, effective January 1, 2001, which provides that "[a]n award of attorney fees may include an award for the time and labor of any legal assistant who contributed nonclerical, legal support under the supervision of an attorney, provided the legal assistant meets the criteria . . ." Moreover, under MCR 2.403(O)(6)(b), as in

-7-

For these reasons, we vacate the trial court's award of attorney and paralegal fees and remand for reconsideration of an appropriate fee award consistent with the *Smith* guidelines.

## C. EXPERT WITNESS FEES

Finally, defendants argue that the trial court abused its discretion by awarding plaintiffs' requested expert witness fees. We disagree.

As observed in *Peterson*, 283 Mich App at 240,

[c]ase-evaluation sanctions include actual costs. MCR 2.403(O)(1). The term "actual costs" is defined as "those costs taxable in any civil action." MCR 2.403(O)(6)(a). Expert-witness fees qualify as "actual costs" under MCR 2.403(O). [Citations omitted.]

Defendants argue that the trial court's award of expert witness fees included an unreasonable hourly rate. Without elaborating or naming specific expert witnesses, defendants appear to argue that *Guerrero v Smith*, 280 Mich App 647; 761 NW2d 723 (2008), dictates a reasonable expert witness fee of $500 an hour. In that case, however, this Court merely concluded that the trial court's award of a $500 hourly rate for the expert in that case did not fall "outside of the range of principled and reasonable outcomes." *Id.* at 677. This Court's decision does not suggest that a different or higher rate would be unreasonable in a different case.

Defendants also argue that the trial court should not have awarded fees for plaintiffs' trucking expert because defendants admitted liability, so there was no need for a trucking expert. Defendants also observe that plaintiffs did not call the trucking expert as a witness at trial. However, an award of expert witness fees does not require that the expert testify at trial. *Peterson*, 283 Mich App at 240-241. Moreover, until the day of trial when the trial court entered its default, the parties had planned and prepared for a full trial.

Defendants also argue that it was unnecessary for plaintiffs' remaining expert witnesses to testify. However, defendants fail to offer any argument or authority beyond their assertion that it was unnecessary for plaintiffs' experts to testify. In any event, whether their testimony was ultimately unnecessary is not dispositive of whether their fees may be recovered. See *id.* at 241. Defendants also fail to argue that the fees were unreasonable. Finally, although defendants assert that Dr. Kapsokavathis billed for time spent waiting for trial to begin, the invoice presented for Dr. Kapsokavathis clearly states that he charged $8,000 for a half day trial appearance.

In summary, defendants have not demonstrated that the trial court abused its discretion by awarding plaintiffs' requested expert witness fees.

We affirm the trial court's determination that plaintiffs are entitled to case evaluation sanctions and affirm the award of expert witness fees, but vacate the award of attorney and

---

effect at all relevant times, "actual costs" for purposes of that rule included "a reasonable attorney fee . . . which may include . . . the time and labor of any legal assistant as defined by MCR 2.626."

paralegal fees and remand for further proceedings consistent with this opinion.  We do not retain jurisdiction.

/s/ Mark J. Cavanagh
/s/ Michael J. Riordan
/s/ Sima G. Patel