*Michigan Supreme Court*
*Lansing, Michigan 48909*

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED SEPTEMBER 25, 2001**

PEOPLE OF THE STATE OF MICHIGAN,

    Plaintiff-Appellee,

v

No. 117594

MICHAEL T. JACKSON,

    Defendant-Appellant.

_____

PER CURIAM

In 1985 the defendant was found guilty following a bench trial of first-degree murder, and his conviction was affirmed on appeal. In 1998, he filed a motion for relief from judgment under MCR subchapter 6.500. Relief was denied by the circuit court, and the Court of Appeals denied leave to appeal. Defendant has filed an application for leave to appeal to this Court. In addition to arguing the substantive issues, he maintains that the limitations on relief provided by MCR 6.508(D) should not apply to him because his conviction

predated the effective date of the rule. He claims that it would constitute a due process violation to apply the rule retroactively to his case.

We conclude that the subchapter 6.500 procedures do apply to convictions before the effective date of the rule and that there is no constitutional impediment to doing so. On the facts of this case, the defendant has not established entitlement to relief as required by MCR 6.508(D), and the order of the circuit court denying relief is affirmed.

I

On December 13, 1983, a fourteen-year-old girl was beaten to death in her Saginaw County home. Attention focused on the defendant when it was learned that he had been there that day. Defendant was then sixteen years old, and thus proceedings began in the probate court. After several days of waiver hearings, the juvenile division of the probate court waived jurisdiction on August 20, 1984, and the defendant was bound over on a charge of first-degree (premeditated) murder.

Defendant waived a jury and presented an insanity defense, making no effort to dispute that he killed the victim. The circuit judge found him guilty as charged on April 18, 1985, and imposed the mandatory life sentence on May 31, 1985. Defendant's motion for a new trial was denied in an opinion issued November 21, 1986.

Defendant appealed, but the Court of Appeals affirmed on

September 7, 1988.[1]  We denied leave to appeal on April 25, 1989.[2]   In his direct appeal, among other issues, the defendant raised claims regarding the waiver of jurisdiction by the juvenile division of the probate court and the admissibility of his confession.

In July 1998, the defendant filed a motion for relief from judgment in the Saginaw Circuit Court, once again challenging the waiver of juvenile court jurisdiction and the admissibility of his confession.   He also argued that MCR 6.508(D) should not be applied retroactively to his case.

The circuit court's consideration of the motion took place in several stages.   First, on August 12, 1998, the court[3] issued an opinion and order dealing with the issues regarding admissibility of the defendant's statement.

The court noted that the voluntariness of the defendant's statement had been tested in both the juvenile court and the circuit court with evidentiary hearings under *People v Walker*, 374 Mich 331; 132 NW2d 87 (1965), and resolved against the defendant.   Further, on his initial appeal, the defendant raised for the first time the question of police compliance with former Juvenile Court Rule 3.3.   The Court of Appeals held that no miscarriage of justice would result from failure

---

[1] 171 Mich App 191; 429 NW2d 849 (1988).

[2] 432 Mich 896 (1989).

[3] The circuit judge who presided at trial had retired, and the motion was assigned to his successor.

to review the objections, but went on to say that despite the police failure to carry out their duties under JCR 3.3, defendant's statement was properly admitted under the totality of the circumstances.

Finally, the circuit court addressed the defendant's new claim that the confession was inadmissible as the product of an illegal arrest. The court discussed the issue at length, finding no error. It said:

> While it is true that only a short time elapsed between defendant's seizure and statement, he was, during that period, twice advised of his *Miranda*[4] rights. Nor does the Court find the police conduct in this case particularly flagrant or of such character as to justify the remedy sought. It is undeniable the police lacked probable cause to arrest defendant at his residence. They did, however, clearly have a right and need to question him about his presence at the victim's home and any knowledge he may have had of the killing. In this regard, the entire purpose of taking him into custody was not to place him under arrest, but to hold him until he could properly be questioned in the presence of his father. Although there apparently was a failure to comply with all appropriate procedures governing questioning of a minor, the officers were at least aware that different procedures and rules applied and did their best to comply with them. There is nothing in this case to suggest that their actions were part of some illegal plan or scheme or product of improper motivation. As noted above, no attempt was made to question defendant until his father was present. Mr. Jackson was contacted as soon as possible, arriving at the post a short time after his son. Both of them were given *Miranda* warnings and the defendant made his statement. As noted by the Court of Appeals, there is nothing in the record to suggest that the father was not fully able to exercise his free will and protect the rights and interests of his son. Under the

---

[4] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

4

circumstances, the Court finds that any taint of initial police misconduct was sufficiently purged and the statement admissible under the Fourth Amendment. It follows that any neglect of trial or appellate counsel in failing to raise this issue was of no consequence. For the same reasons, it also follows that any consent obtained from the defendant and his father to search the premises in question was voluntary and otherwise proper, and that any evidence seized as the result of that consensual search was properly admitted at trial.

The court then turned to the other issue raised in the motion regarding the juvenile court's waiver of jurisdiction. The circuit court said that from the motion and supporting brief it could not say that the issue raised was without merit and that defendant was plainly not entitled to relief. Accordingly, the court ordered the prosecutor to respond to the motion.

Following the response, the court issued a second opinion and order on May 28, 1999, rejecting the defendant's claim. After reviewing the testimony, as well as the applicable legal principles, the court concluded:

> Having reviewed the testimony presented, this Court is not left with any firm and definite conviction defendant was improperly waived to the adult system. Although there was sufficient indication that Michael was amenable to treatment and that the juvenile system could provide the type of treatment required, the evidence and testimony clearly supports the conclusion that there simply was not enough time to sufficiently resolve the underlying psychological problems that helped trigger this tragic event before Michael reached nineteen and juvenile jurisdiction ended, and that he would likely remain a danger to the public if released at that time. Nor does the Court find, as suggested by defendant, that the Probate Judge ignored key testimony or otherwise misinterpreted the evidence. In this regard, the Court notes that while Michael could have been placed in Yorkwood

5

and then transferred to the adult unit at Ypsilanti State Hospital at age eighteen, there would be no way to ensure continued treatment after age nineteen except through a petition for involuntary commitment and hospitalization. Although Judge Barber made no mention of Yorkwood in his opinion, he apparently found, and this Court agrees, that the scenario envisioned by defendant was neither likely [n]or viable. In summary, the Court finds the decision to waive jurisdiction to be supported by substantial and credible evidence on the record. It follows that any claim of ineffective assistance of counsel must also fall.

Defendant filed a delayed application for leave to appeal. The Court of Appeals denied the application, "for failure to meet the burden of establishing entitlement to relief under MCR 6.508."[5]

## II

Subchapter 6.500 of the Michigan Court Rules, containing the procedure for motions for relief from judgment, was added by order of March 30, 1989, and was effective October 1, 1989. It was part of an overall revision of the rules governing criminal procedure. The amendments adopted at that time included several related provisions applicable to criminal appeals, including the addition of MCR 7.205(F)(2), limiting a criminal defendant to a single appeal by right or leave from a conviction, and the amendment of MCR 7.205(F)(3) to make the eighteen-month limit[6] on granting delayed application for leave to appeal applicable to criminal cases.

---

[5] Unpublished order, entered July 18, 2000 (Docket No. 225416).

[6] Since shortened to twelve months.

6

The rules themselves, and the order adopting them, did not say anything about the applicability of the rules to cases that had already been commenced or cases involving crimes committed before the effective date of the amendments. The general provision of the Michigan Court Rules regarding the application of the rules to pending actions is MCR 1.102, which provides:

> These rules take effect on March 1, 1985. They govern all proceedings in actions brought on or after that date, and all further proceedings in actions then pending. A court may permit a pending action to proceed under the former rules if it finds that the application of these rules to that action would not be feasible or would work injustice.

Those principles have been applied not only to the initial adoption of the rules, but also to later adopted or amended rules. See *Reitmeyer v Schultz Equipment & Parts Co*, 237 Mich App 332, 337; 602 NW2d 596 (1999). Subchapter 6.500 has been consistently applied in cases involving convictions and appeals concluded before October 1, 1989, by both this Court and the Court of Appeals. See, e.g., *People v Reed*, 449 Mich 375; 535 NW2d 496 (1995); *People v Carpentier*, 446 Mich 19; 521 NW2d 195 (1994); *People v Ross*, 242 Mich App 241; 618 NW2d 774 (2000); *People v Watroba*, 193 Mich App 124; 483 NW2d 441 (1992).[7]

---

[7] In addition, we have cited MCR 6.508 in numerous orders denying leave to appeal from denial of motions for relief from judgment. E.g., *People v Davis*, 440 Mich 866; 486 NW2d 722 (1992); *People v Dunham-Bey*, 441 Mich 855; 489 NW2d 766 (1992); *People v Yousif*, 444 Mich 878; 511 NW2d 683 (1993); *People v Selby*, 452 Mich 874; 552 NW2d 176 (1996).

MCR 6.508(D) provides the standards for determining whether a defendant is entitled to relief:

> (D) Entitlement to Relief. The defendant has the burden of establishing entitlement to the relief requested. The court may not grant relief to the defendant if the motion
>
> (1) seeks relief from a judgment of conviction and sentence that still is subject to challenge on appeal pursuant to subchapter 7.200 or subchapter 7.300;
>
> (2) alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision;
>
> (3) alleges grounds for relief, other than jurisdictional defects, which could have been raised on appeal from the conviction and sentence or in a prior motion under this subchapter, unless the defendant demonstrates
>
> (a) good cause for failure to raise such grounds on appeal or in the prior motion, and
>
> (b) actual prejudice from the alleged irregularities that support the claim for relief. As used in this subrule, "actual prejudice" means that,
>
> (i) in a conviction following a trial, but for the alleged error, the defendant would have had a reasonably likely chance of acquittal;
>
> (ii) in a conviction entered on a plea of guilty, guilty but mentally ill, or nolo contendere, the defect in the proceedings was such that it renders the plea an involuntary one to a degree that it would be manifestly unjust to allow the conviction to stand;
>
> (iii) in any case, the irregularity was so offensive to the maintenance of a sound judicial process that the conviction should not be allowed to stand regardless of its effect on the outcome of the case;

> (iv) in the case of a challenge to the sentence, the sentence is invalid.

> The court may waive the "good cause" requirement of subrule (D)(3)(a) if it concludes that there is a significant possibility that the defendant is innocent of the crime.

The requirements of showing good cause for failure to raise the issue on direct appeal and prejudice from the alleged error to entitle a defendant to relief are derived from United State Supreme Court decisions involving federal habeas corpus challenges to state convictions and collateral review of federal ones. See *Wainwright v Sykes*, 433 US 72; 97 S Ct 2497; 53 L Ed 2d 594 (1977); *United States v Frady*, 456 US 152; 102 S Ct 1584; 71 L Ed 2d 816 (1982); *Davis v United States*, 411 US 233; 93 S Ct 1577; 36 L Ed 2d 216 (1973). The provision of subrule (D)(2) regarding issues that were decided against the defendant in a prior appeal state familiar principles drawn from the doctrines of res judicata and law of the case.

Before the adoption of subchapter 6.500 and the related appellate procedure provisions, our rules were silent on the matter of delayed motions for new trial. We had said that the courts do not look with favor on such long delayed motions, *People v Barrows*, 358 Mich 267, 272; 99 NW2d 347 (1959), but there was no bar to repeated filings of such motions without any limitation period. *Id.*, p 273; *Reed, supra* at 388.[8]

---

[8] We reiterate the principle stated in *Barrows* that long-delayed motions seeking relief from convictions are disfavored. See *People v Ward*, 459 Mich 602, 611-614; 594 NW2d 47 (1999).

The defendant makes no claim that on their face the provisions of subrule (D)(3) are unconstitutional. Such a claim would be futile in light of the United States Supreme Court's recognition of those standards. Rather, the defendant argues that it constitutes a denial of due process to apply MCR 6.508 to him, because his crime, conviction, and direct appeal occurred before the effective date of the rule. He relies principally on *Rogers v Howes*, 144 F3d 990 (CA 6, 1998).

*Rogers* was a habeas corpus proceeding under 28 USC 2254. The defendant had been convicted of first-degree murder in 1965. In 1992, he filed a motion for relief from judgment, which the trial court denied on the ground that the defendant failed to raise the claims on direct appeal and did not establish good cause for the failure to do so. The defendant filed a habeas corpus petition in United States District Court, which held that because the issues raised were procedurally defaulted under Michigan law, it could not review the claims. However, the United States Court of Appeals for the Sixth Circuit reversed, concluding that the MCR 6.508(D)(3) procedure was not "a firmly established and regularly followed rule of the Michigan courts at the time of petitioner's conviction . . . ." *Id*. at 995. Thus, it did not constitute "an adequate and independent state ground" barring review of petitioner's habeas petition in federal

court. *Id*.

Defendant's reliance on *Rogers* is misplaced. *Rogers* did not hold that the defendant is denied due process by application of MCR 6.508(D)(3) to his motion. Rather, *Rogers* must be understood in the context of federal habeas corpus review of state court convictions. The federal courts will not review a habeas corpus petition where the state prisoner has not first presented his federal claims to the state courts and exhausted all state court remedies available. See, e.g., *Rust v Zent*, 17 F3d 155, 160 (CA 6, 1994). Further, when a habeas corpus petitioner is denied the opportunity to present a federal claim in state court because of failure to comply with state procedural rules, that decision may preclude habeas corpus review where the state procedural rule constitutes an "independent and adequate state procedural ground" for the decision. *Wainwright, supra* at 87. Under federal law, a procedural bar does not operate to preclude federal habeas corpus review unless it is (1) independent of the federal claim at issue, (2) serves as an adequate basis for barring review, and (3) was "firmly established and regularly followed" at the time to which the rule is to be applied. See *Ford v Georgia*, 498 US 411, 424; 111 S Ct 850; 112 L Ed 2d 935 (1991). In *Rogers*, the Sixth Circuit concluded that MCR 6.508 was not such a firmly established and regularly followed rule at the time of the petitioner's conviction and appeal, and

thus the federal court was not barred from considering the habeas corpus petition.

Thus, viewed in context, *Rogers* does not constitute authority that Michigan courts may not apply MCR 6.508(D) retroactively, but only that our decision to do so will not restrict the federal courts in exercise of their authority under 28 USC 2254.

V

That leaves the question whether application of MCR subchapter 6.500 to the defendant's conviction denies due process. The principles are similar to those regarding retroactive application of statutes that are alleged to impair vested rights. In general, an act relating to remedies or modes of procedure may be given retroactive effect. As we said in *In re Certified Questions (Karl v Bryant Air Conditioning Co)*, 416 Mich 558, 572; 331 NW2d 456 (1982):

> [R]etrospective application of a law is improper where the law "takes away or impairs vested rights acquired under existing laws, or creates a new obligation and imposes a new duty, or attaches a new disability with respect to transactions or considerations already past". *Hughes* [*v Judges' Retirement Bd*, 407 Mich 75, 85; 282 NW2d 160 (1979)].

> "Statutes related to remedies or modes of procedure which do not create new or take away vested rights, but only operate in furtherance of a remedy or confirmation of rights already existing will, in the absence of language clearly showing a contrary intention, be held to operate retrospectively and apply to all actions accrued, pending or future, there being no vested right to keep a statutory procedural law unchanged and free

12

from amendment." [Quoting *Hansen-Snyder Co v General Motors Corp*, 371 Mich 480; 124 NW2d 286 (1963) (headnote no. 1).]

See also *Romein v General Motors Corp*, 436 Mich 515, 531; 462 NW2d 555 (1990), aff'd 503 US 181; 112 S Ct 1105; 117 L Ed 2d 328 (1992).

On the related question whether retroactive procedural statutes violate the constitutional prohibition on ex post facto laws, we have explained that not every enactment that works to the detriment of a party constitutes such a violation. See *People v Russo*, 439 Mich 584, 592-593; 487 NW2d 698 (1992):

> The United States Supreme Court has consistently held that the Ex Post Facto Clause, US Const, art I, § 10, cl 1, was intended to secure substantial personal rights against arbitrary and oppressive legislation, and not to limit legislative control of remedies and procedure that do not affect matters of substance. In *Dobbert v Florida*, 432 US 282, 292-293; 97 S Ct 2290; 53 L Ed 2d 344 (1977), the Court stated:

> "It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as ex post facto.

> * * *

> "Even though it may work to the disadvantage of a defendant, a procedural change is not ex post facto. For example, in *Hopt v Utah*, 110 US 574 [4 S Ct 202; 28 L Ed 262] (1884), as of the date of the alleged homicide a convicted felon could not have been called as a witness. Subsequent to that date, but prior to the trial of the case, this law was changed; a convicted felon was called to the

13

stand and testified, implicating Hopt in the crime charged against him. Even though this change in the law obviously had a detrimental impact upon the defendant, the Court found that the law was not ex post facto because it neither made criminal a theretofore innocent act, nor aggravated a crime previously committed, nor provided greater punishment, nor changed the proof necessary to convict. *Id*. at 589."

An enactment will not escape a court's scrutiny under the Ex Post Facto Clause merely because a legislature has given it a procedural label. However, legislation will not be found violative of the clause simply because it works to the disadvantage of the defendant.[9]

We can discern no theory upon which the defendant can be said to have a vested right in the procedures—or lack thereof—for bringing long delayed challenges to criminal convictions extant before the adoption of MCR subchapter 6.500. In 1989, the defendant had been convicted, that judgment had been affirmed by the Court of Appeals, and we denied leave to appeal. At that point, the judgment was final. The defendant had no due process or other constitutional right to further review of his convictions. See *Pennsylvania v Finley*, 481 US 551, 556-557; 107 S Ct 1990; 95 L Ed 2d 539 (1987); *McKane v Durston*, 153 US 684, 687-688; 14 S Ct 913; 38 L Ed 867 (1894). There being no vested right in such procedures, there is no due process impediment to subjecting the defendant to the new subchapter 6.500 procedure.

---

[9] For a similar analysis of the retroactive effect of the new federal limits on habeas corpus relief, see *Libby v Magnusson*, 177 F3d 43, 46-47 (CA 1, 1999).

14

The federal courts have faced similar questions regarding the limitations on second or successive petitions recently adopted as part of the Antiterrorism and Effective Death Penalty Act. PL 104-132, 110 Stat 1214 (1996). Those restrictions have been applied even where the petitioner's first petition preceded the effective date of the statute. See, e.g., *Pratt v United States*, 129 F3d 54, 58 (CA 1, 1997):

> The filing dates of Pratt's two section 2255 petitions straddle AEDPA's effective date. On this basis, Pratt maintains that the question whether the statute applies to his second petition must be answered in the negative because doing so would place an impermissible retroactive burden on his petition. We disagree.
>
> We begin our analysis by remarking the obvious: applying a statute to a pleading that was filed after the statute's effective date is not really a "retroactive" application in the classic sense. Here, moreover, we know on the best of authority that Congress intended that AEDPA apply to all section 2255 petitions filed after its effective date (April 24, 1996). See *Lindh v Murphy*, 521 US 320, 325-326; 117 S Ct 2059; 138 L Ed 2d 481 (1997).
>
> We know, too, that the Supreme Court recently and uncritically applied AEDPA to a prisoner's second habeas petition even though the prisoner had filed his first petition prior to AEDPA's enactment. See *Felker* [*v Turpin*, 518 US 651, 656-657; 116 S Ct 2333; 135 L Ed 2d 827 (1996)]. Several courts of appeals have followed suit. See, e.g., *In re Medina*, 109 F3d 1556, 1561-62 (CA 11, 1997); *Roldan v United States*, 96 F3d 1013, 1014 (CA 7, 1996); *Hatch v Oklahoma*, 92 F3d 1012, 1014 (CA 10, 1996). This approach is sound not only from a legal perspective but also from the standpoint of common sense. After all, if pre-AEDPA jurisprudence somehow attached to an entire course of post-conviction proceedings by virtue of a prisoner's having filed a pre-enactment petition at some point along the way, then the Court's opinion in *Felker* would be drained of all meaning.

15

Defendant also maintains that, concerning his claim regarding improper waiver of jurisdiction by the juvenile division of the probate court, he is not required to show good cause for failure to raise the matter on appeal or actual prejudice. MCR 6.508(D)(3) expressly excepts "jurisdictional defects." He maintains that the circuit court never properly obtained subject matter jurisdiction, entitling him to review of the issue.

Regardless of whether this claim is a jurisdictional one within the meaning of MCR 6.508(D)(3), the defendant is not entitled to relief. Pursuant to MCR 6.508(D), "[t]he defendant has the burden of establishing entitlement to the relief requested." The circuit judge's second opinion discussed the merits of the juvenile court waiver issue and found it to be without merit. Accordingly, the defendant failed to establish his entitlement to relief. Thus, the defendant has not been deprived of review of that issue by the operation of subrule (D)(3).[10]

## VII

In addition to his arguments regarding the applicability of MCR 6.508, the defendant argues that he had shown good

---

[10] Nor does the Court of Appeals citation of the court rule indicate otherwise. The Court of Appeals cited MCR 6.508(D), of which subrule (3) is only a part. The Court of Appeals order cited the rule in the context of its statement that the defendant had not met his burden, and did not refer to this as a failure to establish good cause or prejudice.

cause for failing to raise the issues in his appeal of right because of prior counsel's ineffectiveness in dismissing the juvenile waiver appeal and in failing to raise the police violation of JCR 3.3. As noted earlier, the circuit judge carefully reviewed and discussed the merits of these claims, finding them without merit. This, in effect, amounts to a determination that defendant failed to establish the prejudice aspect of the MCR 6.508(D)(3) standard. That made it unnecessary for the court to address the good cause question. See *Reed, supra* at 400-401.

We find no error in the judge's analysis of the prejudice question and therefore affirm.

CORRIGAN, C.J., and CAVANAGH, WEAVER, KELLY, TAYLOR, YOUNG, and MARKMAN, JJ., concurred.

17