*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

UNPUBLISHED
April 17, 2026
3:20 PM

Plaintiff-Appellee,

v

No. 367648
Oakland Circuit Court
LC No. 2009-225093-FC

JONATHAN BELTON,

Defendant-Appellant.

Before: RIORDAN, P.J., and GARRETT and MARIANI, JJ.

PER CURIAM.

Defendant appeals by right his resentencing of 40 to 70 years' imprisonment for his 2010 convictions of first-degree premeditated murder, MCL 750.316(1)(a), and murder of a peace officer, MCL 750.316(1)(c). We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

In November 2010, a jury found defendant guilty of one count of first-degree murder, one count of murder of a peace officer, and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b, for offenses he committed following a routine traffic stop when he was 16 years old. The trial court subsequently sentenced defendant to concurrent sentences of mandatory life imprisonment without the possibility of parole (LWOP) for each murder conviction and a term of two years' imprisonment for each felony-firearm conviction, which were to be served concurrently to one another but consecutively to the murder convictions. Defendant appealed, and this Court affirmed his convictions but remanded to the trial court for resentencing in accordance with the United States Supreme Court's holding in *Miller v Alabama*, 567 US 460, 465, 471; 132 S Ct 2455; 183 L Ed 2d 407 (2012), that a mandatory LWOP sentence imposed on juvenile defendants violates the Eighth Amendment and that mitigating qualities of youth must be considered when sentencing a juvenile defendant. *People v Belton*, unpublished per curiam opinion of the Court of Appeals, issued October 24, 2013 (Docket No. 302107), pp 1, 13-14 (*Belton I*).

In connection with that prior appeal, this Court detailed the facts underlying defendant's convictions, see generally *id.*, but to summarize for purposes of this appeal: Defendant was

convicted for fatally shooting Oak Park police officer Mason Samborski in the head with Officer Samborski's service weapon in the early morning hours of December 28, 2008. Testimony and other evidence at trial established that Officer Samborski had stopped defendant for a traffic violation and, rather than take defendant to the police station, Officer Samborski escorted defendant to an apartment that defendant claimed he lived in. In actuality, defendant had led Officer Samborski to another individual's apartment in an effort to deceive the officer. Officer Samborski eventually became suspicious and indicated that he would take defendant to jail, so defendant began to run away. Officer Samborski gave chase and attempted to restrain defendant; defendant resisted, and a struggle ensued. During the struggle, Officer Samborski fell down a stairway in the apartment building, hit his head, and sustained head trauma significant enough to impair or incapacitate him. According to the prosecution's theory of the case and supporting evidence, defendant then grabbed Officer Samborski's service weapon while the officer was lying on the ground, pointed the gun at his head, and shot him from less than an inch away. Defendant then fled with Officer Samborski's service weapon and cell phone, which he later used to make multiple phone calls. Neither the gun nor the cell phone was ever recovered. Defendant's theory of the case was that the shooting occurred accidentally during the struggle between him and the officer, and defendant himself did not shoot the gun.

As noted, defendant was convicted by a jury and sentenced to mandatory LWOP, and then he appealed to this Court. See *id*. at 1-2. While his appeal was pending, the United States Supreme Court issued its decision in *Miller*, and both defendant and the prosecution recognized that defendant's case had to be remanded for resentencing in accordance with that decision. *Id*. at 13-14. This Court agreed and remanded for resentencing on that basis, but otherwise rejected defendant's challenges on appeal and affirmed his convictions. *Id.* at 14.

On remand, the prosecution filed a motion pursuant to MCL 769.25(3) requesting that defendant be resentenced to LWOP. The prosecution argued that LWOP was warranted because, despite defendant's young age at the time of the offense, the circumstances surrounding the murder were "especially heinous," and defendant demonstrated a lack of remorse, a poor prison record, and a low potential for rehabilitation. Defendant opposed the prosecution's motion and asked that the court conduct a hearing pursuant to MCL 769.25(6) to consider the mitigating qualities of youth as described in *Miller* and instead sentence him to a term of years in accordance with MCL 769.25(9).

After several hearings and various delays on remand,[1] defendant was resentenced in November 2022. Following a four-day *Miller* hearing to determine whether an LWOP sentence or a term-of-years sentence was appropriate for defendant, the court resentenced defendant to term-of-years sentence of 40 to 70 years. This appeal followed.[2]

---

[1] While the COVID-19 pandemic contributed to some of the time delay, much of it was due to the release of new caselaw addressing juvenile-sentencing and *Miller*-resentencing issues, which were rapidly evolving areas of law while this case was pending on remand.

[2] Shortly after defendant filed his brief on appeal with this Court, he also filed a motion to remand to the trial court for an evidentiary hearing regarding his ineffective-assistance claim discussed

## II. *MILLER* RESENTENCING

On appeal, defendant argues that he is entitled to resentencing on several related but distinct grounds. Specifically, defendant argues that: (1) the trial court did not properly consider his youth as a mitigating factor as required by *Miller* and its progeny; (2) his term-of-years sentence imposed at resentencing was disproportionate and therefore unreasonable in light of *Miller* and its progeny; (3) his term-of-years sentence amounted to an unconstitutional de facto life sentence; and (4) his 70-year maximum sentence impermissibly exceeded the 60-year cap on maximum sentences imposed by the statutory scheme that governed his resentencing. We do not see grounds for relief in defendant's arguments.

### A. CONSIDERATION OF YOUTH AND PROPORTIONALITY OF SENTENCE

Defendant first argues that the trial court did not properly consider his youth as a mitigating factor at resentencing as required by *Miller* and the Michigan Supreme Court's decision in *People v Boykin*, 510 Mich 171; 987 NW2d 58 (2022). Relatedly, defendant argues that his term-of-years sentence imposed at resentencing was disproportionate and therefore unreasonable in light of *Miller* and *Boykin*.

We review a sentence for reasonableness. *People v Posey*, 512 Mich 317, 359-360; 1 NW3d 101 (2023). "[T]he proper inquiry when reviewing a sentence for reasonableness is whether the trial court abused its discretion by violating the 'principle of proportionality' set forth in *People v Milbourn*, 435 Mich 630, 636; 461 NW2d 1 (1990), 'which requires sentences imposed by the trial court to be proportionate to the seriousness of the circumstances surrounding the offense and the offender.' " *People v Steanhouse*, 500 Mich 453, 459-460; 902 NW2d 327 (2017).

"As recognized by our Supreme Court in *Boykin*, the holding in *Miller* stands for the proposition that youth matters in sentencing decisions and that the mitigating characteristics of youth must be considered by a [sentencing] court." *People v Echols*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 370709); slip op at 3-4 (cleaned up); see also *Boykin*, 510 Mich at 192. Defendant in this case was resentenced under MCL 769.25, which is part of a statutory sentencing scheme enacted by the Michigan Legislature recognizing the *Miller* decision and eliminating "mandatory LWOP for all juveniles who were convicted of specific crimes, including first-degree murder." *People v Eads*, ___ Mich App ___, ___; ___ NW3d ___ (2025) (Docket No. 357332); slip op at 6. Although LWOP is still a possibility under the statute, "the prosecution is required to move for such a sentence" and, at a hearing to address the so-called *Miller* factors, must "rebut, by clear and convincing evidence, the presumption that a sentence of LWOP is disproportionate." *Id*. at ___; slip op at 6 n 10; see also MCL 769.25(2)-(3), (6); *People v Taylor*, 510 Mich 112, 134-136; 987 NW2d 132 (2022). The *Miller* factors that must be considered at a hearing under MCL 769.25(6) are: (1) "the juvenile's chronological age and its hallmark features,"

---

more fully below. This Court denied without prejudice defendant's motion to remand "for failure to persuade the Court of the necessity of remand at th[at] time." *People v Belton*, unpublished order of the Court of Appeals, entered June 16, 2025 (Docket No. 367648). Upon plenary review, we continue to see no need for a remand to properly dispose of the claim.

including "immaturity, impetuosity, and failure to appreciate risks and consequences"; (2) "the juvenile's family and home environment"; (3) "the circumstances of the homicide offense, including the extent of [the juvenile's] participation in the conduct" and any "familial and peer pressures"; (4) "the incompetencies of youth, which affect whether the juvenile might have been charged with and convicted of a lesser crime, for example, because the juvenile was unable to deal with law enforcement or prosecutors or because the juvenile did not have the capacity to assist their attorney in their own defense"; and (5) "the juvenile's possibility of rehabilitation." *Taylor*, 510 Mich at 126 (quotation marks and citation omitted).

If the sentencing court decides not to impose LWOP, then it "shall sentence the individual to a term of imprisonment" within the statutorily authorized range. MCL 769.25(9); MCL 769.25a(4)(c). When fashioning an appropriate term-of-years sentence for a juvenile offender under MCL 769.25 or MCL 769.25a, the court must duly consider the mitigating factors of youth as part of its assessment of the "four basic sentencing considerations" provided in *People v Snow*, 386 Mich 586, 592; 194 NW2d 314 (1972): "(1) reformation of the offender; (2) protection of society; (3) disciplining of the wrongdoer; and (4) deterrence of others from committing like offenses." *Boykin*, 510 Mich at 183-184, 188, 193 (quotation marks omitted); see also *id*. at 189 ("Given that youth is a mitigating factor, it will inevitably factor into *Snow*'s four considerations."). That said, a sentencing court's consideration of those factors "need not be articulated on the record." *Id*. at 193-194. Indeed, "there are no magic words or phrases that a trial court must use to show that it adequately considered the mitigating qualities of youth within *Snow*'s sentencing criteria," and the sentencing court need only "make a record demonstrating that [it] considered the defendant's youth and treated it as a mitigating factor" in a way that is "sufficient to facilitate appellate review[.]" *People v Copeland*, ___ Mich App ___, ___; ___ NW2d ___ (2024) (Docket No. 363925); slip op at 3-4, citing *Boykin*, 510 Mich at 192-194. See also *Copeland*, ___ Mich App at ___; slip op at 5 n 2 (noting that "nothing required the trial court to articulate on the record how it considered the *Snow* factors").

After a multi-day *Miller* hearing under MCL 769.25(6), the trial court in this case ultimately decided not to sentence defendant to LWOP as requested by the prosecution and to instead sentence defendant to a term of years. As a result, the court had the discretionary authority to sentence defendant within the legislatively proscribed sentencing range of a minimum of 25 to 40 years and a maximum of "not less than 60 years." MCL 769.25(9); see *Boykin*, 510 Mich at 183. According to defendant, the trial court erred in its exercise of this discretion—namely, by imposing a minimum sentence at the top of the 25-to-40-year range "without any explanation of why the sentence was proportionate." Defendant maintains that the court failed both to treat his youth as mitigating and to consider each *Snow* factor in light of his youth, and a proper application of those principles makes clear that "a far more lenient sentence" is appropriate.

We do not see merit in defendant's claims. To the extent defendant suggests that the trial court, in imposing its term-of-years sentence, was required to make specific findings on the record regarding its consideration of the mitigating qualities of youth and each of the *Snow* factors, caselaw from this Court and our Supreme Court holds otherwise. See *Boykin*, 510 Mich at 193; *Copeland*, ___ Mich App at ___; slip op at 4, 5 n 2. All that was required of the court was an explanation sufficient to facilitate appellate review of the sentence and its proportionality. *Boykin*, 510 Mich at 192-194; *Copeland*, ___ Mich App at ___; slip op at 3-4. The record in this case is more than sufficient to facilitate such review, and makes clear that the trial court properly

considered defendant's youth in light of *Miller* and *Snow* when fashioning a sentence that was duly proportionate to the offense and the offender.

The trial court in this case conducted a four-day *Miller* resentencing hearing to determine whether LWOP or a term-of-years sentence was appropriate for defendant, at which both parties presented extensive documentary and testimonial evidence (from both lay and expert witnesses) regarding all aspects of defendant's life, including his age, upbringing, psyche, and prison record. The court also received, both before and after the multi-day *Miller* hearing, extensive briefing from the parties regarding all relevant caselaw, the *Miller* factors, how those factors applied to defendant in this case, and what sentence they believed to be most appropriate for defendant in light of those factors. In addition, the court received and reviewed a presentence investigation report describing the circumstances surrounding both defendant and the offense at issue.

The trial court thereafter issued a written opinion and order detailing its findings under each of the *Miller* factors and concluding that, based on its analysis of those factors, LWOP may be an appropriate sentence for defendant. The court first made clear that it was "mindful of the lack of maturity at the time of the offense, which explain[ed] some of [d]efendant's behavior surrounding the murder," noting that defendant "was 16 years old when he committed this murder" and thus "was immature and his brain likely had not reached full development." The court also addressed "[d]efendant's family and home life," and "the incompetencies of youth," finding that neither factor weighed for or against the LWOP sentence requested by the prosecution. As to "the circumstances of the murder," the court found that they "weigh[ed] heavily in favor of an LWOP sentence," emphasizing that defendant's "actions prior to the murder, at the time of the murder, and after the murder do not reflect transient immaturity or other hallmarks of youth" and had instead "show[n] a criminal sophistication and violent disposition in excess of [d]efendant's chronological age." The court further found that defendant's "lack of remorse (both at the time of the offense and currently) reflect[ed] his antisocial disorder," but also that defendant had "completed a number of programs while incarcerated" and "may eventually be rehabilitated with the proper services," which would be more available to him under a term-of-years sentence rather than an LWOP sentence.

A few days after it issued its written opinion and order, the court held a final resentencing hearing, at which the court heard victim impact statements, defendant's allocution, and counsels' arguments. The court ultimately concluded that a term-of-years sentence of 40 to 70 years was appropriate in this case. The court explained that it had "considered and reconsidered" and "changed [its] mind a million times" about whether it should sentence defendant to LWOP or a term of years, and while it felt that defendant "earned a sentence of [LWOP]," it opted for a term of years in light of defendant's youth and the court's discomfort with "condemning someone and saying they have no chance at rehabilitation." The court then elaborated on why its chosen sentence was proportionate. After generally reiterating that it considered defendant's youth in its resentencing decision, the court observed that the offense at issue was both "a dangerous and impulsive act"; that, up until the day of the hearing (which occurred nearly 15 years after the offense), the court "had not heard [defendant] take responsibility" for his actions; and that the court did not know if defendant "is going to be able to obtain parole" because he "has a lot he needs to change before then." But given defendant's "youth and the impulsiveness of his actions," the court "fe[lt] this [wa]s a proportional sentence."

This record makes clear that, consistent with *Miller* and its progeny as well as *Snow*, the trial court duly considered defendant's youth and its attendant characteristics as mitigating and properly incorporated that consideration into its determination of a proportionate sentence for this offense and offender. See *Miller*, 567 US at 471, 476; *Boykin*, 510 Mich at 188-189, 192-193; *Steanhouse*, 500 Mich at 459-460. As its written and oral findings reflect, the court determined, based on all the information before it, that the circumstances of the offense and defendant's conduct surrounding it were severe and concerning enough to warrant LWOP, and defendant's history and behavior in both the years prior and the years subsequent to the offense indicated that his path to rehabilitation would be, at best, very uncertain and long. But the characteristics of defendant's youth at the time of the offense, such as impulsivity and potential for reform, led the court to conclude that the possibility of parole should not be fully eliminated, and a very lengthy term-of-years sentence would be most suitable for defendant and his crime.

Defendant provides several reasons why he believes that the record supports "a more lenient sentence" than what the trial court ultimately imposed, including that he committed the murder when he was 16 years old after growing up in an "unstable environment," demonstrated a relatively good prison record, participated in "the limited programming offered to him" in prison, and "had the possibility" to be rehabilitated. Defendant fails to recognize, however, that the trial court did find reasons for leniency in such considerations—just not the extent of leniency that defendant desires. While defendant may disagree with the court's assessment in that regard, he has failed to show any reversible error in it. See *Copeland*, ___ Mich App at ___; slip op at 12 ("[T]he abuse-of-discretion standard recognizes that there is no single correct outcome, but a range of reasonable and principled outcomes."). Accordingly, defendant has not demonstrated that he is entitled to sentencing relief on these bases.

## B. DE FACTO LIFE SENTENCE

Defendant next argues that his term-of-years sentence violates the United States and Michigan constitutions because it amounted to a de facto life sentence. Defendant did not raise this argument in the trial court or in the motion to remand he filed in this Court, leaving the issue unpreserved and thus reviewed for plain error affecting substantial rights. See *People v Burkett*, 337 Mich App 631, 643; 976 NW2d 864 (2021). To obtain appellate relief under the plain-error standard, the defendant must show: (1) an error occurred, (2) the error was clear or obvious, and (3) the error affected substantial rights. *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). To satisfy the third element, the defendant generally must show that the error "affected the outcome of the lower court proceedings." *Id*. And even when these three requirements are met, "[r]eversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affected the fairness, integrity or public reputation of judicial proceedings independent of the defendant's innocence." *People v Allen*, 507 Mich 597, 614; 968 NW2d 532 (2021) (quotation marks and citation omitted).

In advancing this challenge, defendant focuses primarily on establishing that, due to the length of his minimum sentence, he likely will not become eligible for parole until he has reached or surpassed his life expectancy. But even if that is so, defendant offers no authority or meaningful argument in support of the notion that such a punishment for a juvenile offender convicted of first-

degree murder is unconstitutionally cruel or unusual, facially or as applied to him.[3]  As explained above (and further explained below), defendant received a sentence that was consistent with the statutory scheme enacted in the wake of *Miller*, see MCL 769.25(9), and defendant cites no authority suggesting that this sentencing scheme is unconstitutionally cruel or unusual.  See *People v Jarrell*, 344 Mich App 464, 482; 1 NW3d 359 (2022) ("A party challenging the constitutionality of a statute has the burden of proving its invalidity.").  Nor does defendant identify or make any attempt to apply the *Bullock*[4] factors, which control this constitutional inquiry, to demonstrate that his sentence for first-degree murder is unconstitutional.  Cf. *Eads*, ___ Mich App at ___; slip op at 9-13 (applying the *Bullock* factors to determine whether a juvenile offender's term-of-years sentence for second-degree murder was unconstitutionally cruel or unusual).[5]

Defendant reasons that, because the trial court "could not say that [he] was beyond rehabilitation" and thus declined to impose an LWOP sentence, a de facto life sentence was unconstitutional.  As discussed, however, the trial court found that LWOP—which remains a potentially available punishment under *Miller* and its progeny for juvenile offenders convicted of first-degree murder—may be an appropriate punishment for defendant in this case, and the court very nearly imposed it.  The mere fact that the court ultimately declined to subject defendant to that most severe punishment does not mean that the court acted unconstitutionally in selecting a lesser, albeit still very significant, punishment.  And as the trial court duly recognized, defendant's

---

[3] As this Court has explained, the Michigan constitution, which "prohibits cruel *or* unusual punishment, Const 1963, art 1, § 16," provides broader protection in that regard than the United States constitution, which "prohibits cruel *and* unusual punishment, US Const, Am VIII."  *Eads*, ___ Mich App at ___; slip op at 8-9 (quotation marks and citation omitted).  Given that the Michigan constitution provides more robust protection to defendant, and given that defendant does not attempt to differentiate between the two constitutions in making his argument, we focus our analysis on the Michigan constitution.

[4] *People v Bullock*, 440 Mich 15; 484 NW2d 866 (1992).

[5] Pointing to *Eads*, defendant argues that "life expectancy <u>has</u> been found to be relevant in sentencing juvenile defendants" and that, just as the term-of-years sentence in *Eads* was deemed unconstitutional, so too should his sentence be deemed unconstitutional.  *Eads*, however, is plainly distinguishable from this case, both factually and legally.  The defendant in *Eads* received a term-of-years sentence greater than defendant did here, for the lesser offense of second-degree murder and without the procedural safeguards guaranteed to juvenile offenders (like defendant here) convicted of the greater offense of first-degree murder.  *Eads*, ___ Mich App at ___; slip op at 9-12.  Furthermore, the Michigan Supreme Court had already determined in *People v Stovall*, 510 Mich 301; 987 NW2d 85 (2022), that a parolable life sentence was unconstitutional for juvenile offenders convicted of second-degree murder.  Applying *Stovall* and the *Bullock* factors, this Court in *Eads* concluded that the defendant's sentence for second-degree murder—which was in some ways harsher than a parolable life sentence—must also be deemed unconstitutional.  *Eads*, ___ Mich App at ___; slip op at 9-13.  As discussed, defendant has failed to offer legal authority, or meaningful argument under any such authority, that would similarly indicate that his 40-to-70-year sentence for first-degree murder under the applicable statutory scheme for that offense is unconstitutional.

sentence is in fact a lesser punishment than LWOP, as it does leave open some possibility of parole. Although that possibility may not come until defendant is at least 58 years old, the court deemed that measure of possibility proportionate to the offender and offense at issue and, as discussed, defendant has failed to meaningfully explain how that assessment or outcome is unconstitutionally cruel or unusual in this case. Accordingly, defendant has not established entitlement to relief on this basis. See *Carines*, 460 Mich at 763.

## C. MAXIMUM SENTENCE

Defendant also argues that the trial court erred by imposing a 70-year maximum sentence because the maximum term-of-years sentence a juvenile offender can receive under the statutory sentencing scheme is 60 years. Defendant did not object to his term-of-years sentence on this ground below or raise the issue in the motion for remand he filed in this Court, and so this issue is unpreserved and thus reviewed for plain error affecting substantial rights. See *Burkett*, 337 Mich App at 643.

Because defendant's direct appeal was pending when *Miller* was decided, he was resentenced under MCL 769.25 rather than MCL 769.25a. See MCL 769.25(1)(b)(*ii*). MCL 769.25(9) provides, in relevant part, that "the court shall sentence the individual to a term of imprisonment for which the maximum term shall be *not less than* 60 years." (Emphasis added.) This is in contrast to MCL 769.25a(4)(c), which provides, in relevant part, that "the court shall sentence the individual to a term of imprisonment for which the maximum term shall be 60 years." As this Court observed in *People v Meadows*, 319 Mich App 187, 191 n 1; 899 NW2d 806 (2017), this difference in language between the provisions reflects the Legislature's intent to "provide[] some room for the exercise of discretion" by the trial court when imposing a sentence under MCL 769.25(9) as opposed to MCL 769.25a(4)(c). "[W]e must discern the intent of the Legislature by examining the plain language of the words used in the statute," *id*. at 191, and here, that plain language indicates that the trial court in this case had discretionary authority under the statute to sentence defendant to a maximum of 70 years. See also *Boykin*, 510 Mich at 183 ("Where the Legislature has assigned a range of sentencing outcomes for any given conviction, the trial court has authority to sentence a defendant within that range."). Accordingly, defendant has not demonstrated entitlement to relief on this basis. See *Carines*, 460 Mich at 763.

## III. DOUBLE JEOPARDY

Defendant next argues that we should remand this case to the trial court to correct his judgment of sentence because his convictions of first-degree murder and murder of a peace officer, as well as the two related felony-firearm convictions, are based on the shooting death of a single victim and therefore violate his double-jeopardy rights. This case, however, was remanded to the trial court for the limited purpose of resentencing defendant in conformance with *Miller*. See *Belton I*, unpub op at 1, 13-14. The scope of this appeal is therefore limited to issues arising from the resentencing itself. See *People v Kincade*, 206 Mich App 477, 481; 522 NW2d 880 (1994) ("[W]here an appellate court remands for some limited purpose following an appeal as of right in a criminal case, a second appeal as of right, limited to the scope of the remand, lies from the decision on remand."); *People v Gauntlett*, 152 Mich App 397, 400; 394 NW2d 437 (1986), citing *People v Jones*, 394 Mich 434, 435-436; 231 NW2d 649 (1975) ("An appeal from resentencing is limited to the resentencing proceeding."). Defendant's double-jeopardy challenge arose from his

original convictions, not from resentencing on remand. Defendant had the opportunity to raise this challenge during his first appeal but did not do so; he may not do so now because it is beyond the limited scope of this second appeal as of right from his resentencing. Accordingly, we decline to address this challenge related to defendant's original convictions.[6]

## IV. JUDICIAL BIAS

Defendant also argues that he was denied his due-process right to be sentenced by an impartial judge. As with the previous issue, however, this issue is not properly before this Court for consideration as it is outside the limited scope of defendant's second appeal as of right from his resentencing. See *Kincade*, 206 Mich App at 481; *Gauntlett*, 152 Mich App at 400. Defendant challenges a statement made by the trial judge that, according to defendant, "demonstrated a deep-seated favoritism that would make a fair judgment impossible." But by defendant's own admission, the statement he now challenges on appeal was made at his original sentencing hearing in 2010, which occurred more than a decade before the resentencing now at issue in this appeal. Defendant had the opportunity to raise concerns about judicial bias based on the statement in question in his first appeal as of right, as well as in the trial court after this Court remanded for resentencing, but he did not do so. And defendant does not challenge any of the trial judge's statements at the resentencing hearing or otherwise assert that the trial judge demonstrated impropriety or bias at that hearing. Accordingly, defendant's challenge goes beyond the limited scope of his second appeal as of right from his resentencing, and it is thus beyond the proper scope of our review.[7]

---

[6] We note that this does not preclude defendant from seeking postappellate relief on this issue under MCR 6.500 *et seq.* See *People v Jackson*, 465 Mich 390, 396-397; 633 NW2d 825 (2001).

[7] Defendant also argues that his counsel provided ineffective assistance for "failing to object to resentencing in front of a judge that openly pronounced her personal bias." Defendant offers nothing beyond this conclusory statement in support of this claim, leaving it improperly presented for this Court's review. See *Burkett*, 337 Mich App at 639 n 4. We note, however, that we do not see apparent merit in the claim. As discussed above, defendant does not raise any concerns with how the trial judge conducted herself at the resentencing hearing; defendant only takes issue with the trial judge's statement at his original sentencing hearing over a decade earlier that "[t]his [wa]s tragic beyond words and, for some reason, this case felt so personal to me, more than any case I've been involved in." Defendant avers that this statement "demonstrated bias beyond critical remarks or expressions of dissatisfaction" and "illustrated a deep-seated and personal favoritism against" him, but he fails to particularly substantiate that characterization or explain how this isolated comment might be sufficient in itself to overcome the governing "strong presumption of judicial impartiality." *People v Loew*, 514 Mich 158, 185-186; 22 NW3d 323 (2024). Nor does defendant make any attempt to explain how counsel was constitutionally deficient by not seeking to object to his resentencing before the judge on the basis of this statement, or how there is any reasonable probability that, had counsel done so, the outcome of defendant's resentencing would have been more favorable for him. See *People v Shaw*, 315 Mich App 668, 672; 892 NW2d 15 (2016).

-9-

## V. EFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that his counsel at resentencing was ineffective for failing to object to the testimony of the prosecution's lead expert witness under MRE 702 and *Daubert v Merrell Dow Pharm, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993). The admission of expert opinion testimony is generally governed by MRE 702. But the rules of evidence—and thus the authorities interpreting them—do not apply at sentencing hearings. See MRE 1101(b)(3); *People v Uphaus*, 278 Mich App 174, 183-184; 748 NW2d 899 (2008) (noting that "many of the constitutional requirements applicable to criminal trials do not apply at sentencing" and that, "when considering a defendant's sentence, a trial court may properly rely on information that would otherwise not be admissible under the rules of evidence"); see also *United States v Gushlak*, 728 F3d 184, 197 n 10 (CA 2, 2013) (relying on FRE 1101(d)(3)—a provision that substantively mirrors MRE 1101(b)(3)—to hold that neither FRE 702 nor the "authorities interpreting that Rule," including *Daubert*, apply at sentencing proceedings).[8] As a result, there was no objection on this basis to be made, and defendant's counsel was not constitutionally ineffective for failing to make one. See *People v Ericksen*, 288 Mich App 192, 201; 793 NW2d 120 (2010) ("Failing to advance a meritless argument or raise a futile objection does not constitute ineffective assistance of counsel.").

Furthermore, the record makes clear that defendant's counsel extensively and effectively cross-examined this witness about the reliability and credibility of his opinions, and further undermined those opinions by presenting the testimony of her own expert witnesses on behalf of defendant. In other words, defendant was afforded a more than "adequate opportunity to rebut any matter that he believe[d] to be inaccurate." *Uphaus*, 278 Mich App at 184 (quotation marks and citations omitted). Accordingly, defendant's ineffective-assistance claim fails.

Affirmed.

/s/ Michael J. Riordan
/s/ Kristina Robinson Garrett
/s/ Philip P. Mariani

---

[8] "Because the Michigan Rules of Evidence in general parallel the text of the federal rules on which the state committee's product was based," this Court may "find helpful and, in some instances, persuasive, commentary and caselaw that refers to the Federal Rules of Evidence." *People v Denson*, 500 Mich 385, 405 n 10; 902 NW2d 306 (2017) (quotation marks and citation omitted).